## UNITED STATES DISTRICT COURT
### District of South Carolina

```
-----------------------------------------------------------------x
CELESTE B. DELFIN,                          )
                       Plaintiff,           )
                                            )    Index No. 20-cv-_____
        - against -                         )
                                            )    COMPLAINT
GRANDEUR MANAGEMENT INC.                    )    Trial by Jury Demanded
and RAJA I. YOUNAS,                         )
                                            )
                       Defendants.          )
-----------------------------------------------------------------x
```

**Plaintiff** CELESTE B. DELFIN, appearing *pro se*, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1. This action arises out of Defendants' recruitment, provision and/or obtaining of Plaintiff's labor or services by means of threats of serious harm and by the abuse of the immigration sponsorship process that resulted in the forced labor and wage exploitation of the Plaintiff by Defendants.

2. Plaintiff was forced under the circumstances to continue working for Defendants despite her complaints of not being paid overtime wages because of Defendants' threats to withdraw or cancel her immigration sponsorship.

3. Plaintiff asserts claims arising from violations of her rights under the Trafficking Victims Protection Act (18 U.S.C. §1589 and 18 U.S.C. §1590).

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), in that the claims arise from the Trafficking Victims Protection Act (TVPA), 18 U.S.C. 1589.

1

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District of South Carolina. Venue is proper pursuant to 18 U.S.C. §1965.

**PARTIES**

6. Plaintiff Celeste B. Delfin ("Delfin") is a citizen of the Philippines. She lawfully entered the United States with an H-2B visa in April 2009 as a temporary guest worker to perform labor. She presently resides in Queens County, state of New York.

7. Defendant Grandeur Management, Inc. ("Grandeur Management") is, upon information and belief, a business corporation duly organized and existing under the laws of the state of South Carolina, and maintains an office at 1809 N. Oak Street, Myrtle Beach, SC 29577.

8. Upon information and belief, Defendant Grandeur Management was, at all times relevant, a hotel and resort services provider, and was engaged in the linen and laundry management, and in the housekeeping and maintenance business.

9. Defendant Raja I. Younas ("Younas") is an adult individual residing in South Carolina.

10. Upon information and belief, Younas is the owner or President or chief executive officer, or manager of corporate defendant, Grandeur Management.

**STATEMENT OF FACTS**

11. Sometime in December 2009, an officer/recruiter of Grandeur Management contacted a Filipino co-worker of Plaintiff named Ron Victa, whereby Grandeur Management manifested its intention to hire Filipino H-2B workers to work as housekeeping attendants in South Carolina. The officer/recruiter wanted Ron Victa to spread the word among his fellow Filipino H-2B workers about the recruitment and hiring in South Carolina.

12. After having been informed of the possible recruitment and hiring in South Carolina, Delfin communicated to Grandeur's officer/recruiter, who in turn, encouraged her to submit her resume, copies of her passport pages and H-2B papers, for possible employment in South Carolina.

13. It was only sometime early 2011 when Grandeur's President, herein Defendant Younas, made a firm offer of employment to Delfin to work as a housekeeping attendant in Defendants' client-hotels in South Carolina.

14. Younas advised Delfin to move to South Carolina as early as March 2011, when Grandeur and Younas assigned Delfin to work at two different Myrtle Beach hotels.

15. Younas and Grandeur promised Delfin that they would take care of transferring Delfin's H-2B status under Grandeur's immigration sponsorship.

16. Defendants regularly assigned Delfin to work from 8 am to 2 pm almost everyday as a housekeeping attendant at the Coral Beach Resort.

17. Defendants regularly assigned Delfin to work from 3 pm to 11 pm almost everyday as a housekeeping attendant at the Westgate Myrtle Beach Ocean Resort.

18. The two hotels where Delfin was assigned to work at and where she rendered her housekeeping services were both located within the District of South Carolina.

19. Defendants paid Delfin eight dollars ($8.00) per hour.

20. Although Defendants oftentimes required Delfin to render more than forty (40) hours per week, they did not pay Delfin the correct overtime rate, but paid her only $8.00 per hour for all of her hours of work.

21. As and by way of an example, for the pay period from 04/15/2011 to 04/28/2011, Defendants required Delfin to render 36.52 work hours at the Westgate Resort and also 65.54 work hours at the Coral Resort, for a total of 102.06 work hours.

22. For this particular pay period, Defendants paid Delfin $8.00 per hour for all of her 102.06 hours. They did not pay Delfin any overtime wage of one and a half her regular $8.00 hourly rate for those hours beyond 40 hours per week.

23. Sometime in May 2011, Defendants informed Delfin that their H-2B transfer petition, with case number EAC-11-174-50990, was approved by the Immigration Service, and that her H-2B status was valid until December 1, 2011.

24. At around the time when Defendants informed Delfin of the approval of her H-2B transfer petition and the extension of her H-2B status, Delfin complained to Younas that she was not being paid the correct overtime wage.

25. Upon hearing Delfin's complaint, Younas told her that she should be grateful that she was being provided employment and that she was earning money.

26. Delfin reminded Younas that she was still paying debts she incurred in the Philippines to pay her recruiters in coming to work in the United States. When Younas interviewed Delfin more than a year earlier, Delfin had informed Younas about how she had to borrow money and use their family properties as collateral just to be able to pay her recruiters.

27. Younas replied that Delfin's debts were not his problem. Younas also told Delfin that if Delfin was not happy with her work, that she should just tell him that, and that he (Younas) would simply cancel or revoke the H-2B transfer petition Defendants had filed for her.

28. Delfin got scared of losing her H-2B status. So, she just kept quiet and did not bother to follow up her complaints of overtime non-payment with the Defendants.

29. Sometime November 2011, before Delfin's H-2B status would expire, Defendants told her that they would again extend her H-2B status.

30. Delfin thanked Younas for making sure that she stayed lawfully in the country.

31. Younas replied that he would ensure Delfin did not become unlawfully present so she could continue working for his company.

32. Upon information and belief, Defendants filed a Form I-539 application on behalf of Delfin sometime middle of November 2011.

33. Instead of filing a Form I-129 petition to extend Delfin's H-2B status, Defendants filed the Form I-539 application to change Delfin's H-2B status to B-2 status.

34. Defendants did not immediately inform Delfin of the kind of immigration application that they caused to be filed on her behalf.

35. Delfin later found out that the Form I-539 application that Defendants caused to be filed on her behalf had case number EAC-12-800-04415.

36. During all these times, Defendants represented to Delfin that they had caused the extension of her H-2B status, and thus required her to continue working for them.

37. Defendants told Delfin that while her supposed H-2B extension petition was pending adjudication with the Immigration Service, she could allegedly continue working legally for them.

38. Delfin always relied on Defendants' promises and representations about her being allegedly sponsored as an H-2B worker and about her being legally allowed to work in the United States.

39. Sometime in May 2012, Younas informed Delfin that her extension petition was approved by the Immigration Service, and that it was valid only until May 30, 2012.

5

40. Delfin requested to be given a copy of the approval notice. After some hesitation, Younas eventually gave Delfin a copy of the approval notice.

41. To Delfin's surprise, the approval notice was not about the extension of her H-2B status, but about the change of her H-2B status to B-2 status.

42. Delfin inquired from Younas why she had a B-2 status, and not an extended H-2B status.

43. Younas feigned innocence, and seemed to blame his office employees for preparing the wrong immigration form. Nonetheless, he promised Delfin that he would make sure that the next immigration form to be filed on Delfin's behalf would be a return to her H-2B status.

44. Sometime end of June 2012, Younas showed Delfin a copy of a USCIS notice of receipt (EAC-12-178-53578) evidencing the filing of a Form I-129 petition, that requested H-2B classification, and with Delfin being one of several employee-beneficiaries.

45. It was also around this time (late June 2012) when Delfin complained again to Younas about her wages. She complained that she should be paid time and a half her regular hourly rate for all of her hours beyond 40 each week.

46. Since sometime early 2102, Defendant Grandeur Management had been using a payroll company (American Pro Accounting and Payroll LLC) to prepare its payroll. The pay stubs prepared by said company did not correctly reflect the total number of hours worked by Plaintiff.

47. Delfin complained that not only all of her work hours were not paid, but when she worked more than 40 hours a week, she was not paid any overtime pay.

48. Instead of listening to Delfin and giving her what she lawfully deserved, Younas shouted at Delfin and called her an ingrate, and explicitly told her that if she did not stop complaining about her overtime wages, Younas would allegedly cancel or revoke the latest H-2B petition on her behalf.

49. Delfin could only cry and keep quiet, because she did not want the H-2B petition on her behalf to be canceled or revoked. She did not want to lose her immigration status.

50. Delfin also did not want to lose her job.

51. So again, Delfin did not push through with her complaints, and suffered silently.

52. Although Plaintiff worked more than forty (40) hours on most work-weeks, Defendants did not pay her time and a half for the extra hours beyond forty (40) each workweek.

53. Upon information and belief, Defendants did not keep accurate records of wages or of hours worked by the Plaintiff.

54. Upon information and belief, Defendants were at all times aware of their legal obligation to pay Plaintiff overtime pay at the rate of one and one-half times her regular rate of pay for hours worked per week in excess of forty under the Fair Labor Standards Act. In addition, Defendants were aware of their legal obligation to issue Plaintiff accurate wage statements on each payday in accordance with the FLSA. Thus, their violations of the FLSA with respect to the Plaintiff were willful.

55. Because Delfin did not want Defendants to cancel or withdraw her H-2B sponsorship, she was forced to continue working for Defendants, even if she was not paid her proper overtime wages.

56. Defendants gained and maintained control over Delfin by actively promoting the impression that if she did not obey them and follow their work instructions, she would be made

to suffer the consequences, such as withdrawal of immigration sponsorship and/or loss of employment.

57. Because of the conditions of coercion and control imposed upon her by Defendants, Delfin was forced under the circumstances to continue working for Defendants and to provide housekeeping services for them and their clients, because of the threats of loss of immigration status.

58. Plaintiff suffered and continues to suffer emotional distress, financial distress, and harm to her immigration status due to Defendants' coercive tactics and her resulting forced labor and/or trafficking.

59. The emotional effects suffered by Plaintiff included disrupted sleeping, nightmares, ongoing feelings of fear, difficulty developing trust, anxiety, depression, difficulty concentrating and stress.

60. Delfin finally found the courage to leave her employment in September 2012.

61. To date, Delfin continues to see and to be seen by medical professionals to address her social, emotional and psychological issues brought about by her labor trafficking experience with Defendants.

## CAUSE OF ACTION
### Trafficking Victims Protection Act of 2003 ("TVPA")
### Forced Labor, 18 U.S.C. §§ 1589, 1590

62. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 61 as if set forth fully herein.

63. Plaintiff brings this claim against both Defendants under 18 U.S.C. §1595 of the Trafficking Victims Protection Act.

64. Defendants subjected Plaintiff to forced labor in violation of 18 U.S.C. §1589.

65. Defendants knowingly provided and obtained Plaintiff's labor and services by subjecting Plaintiff to threats of serious harm, including loss of immigration status and/or cancellation of immigration sponsorship, in violation of 18 U.S.C. §1589(2).

66. Defendants knowingly provided and obtained Plaintiff's labor and services by abusing the immigration sponsorship process when they misrepresented to Plaintiff that they had allegedly caused the extension of her H-2B status, when in truth and in fact, they filed a change of her H-2B status to B-2 status, and yet required her to continue working for them.

67. Defendants Grandeur Management and Younas knowingly benefited, financially, from participation in the venture of providing and/or obtaining the labor or services of Plaintiff by means of subjecting Plaintiff to threats of serious harm, including loss of immigration status and/or cancellation of immigration sponsorship, and also by abusing the immigration sponsorship process when they misrepresented to Plaintiff that they had allegedly caused the extension of her H-2B status, when in truth and in fact, they filed a change of her H-2B status to B-2 status, and yet required her to continue working for them.

68. As a result of the above violations, Plaintiff suffered damages.

69. Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial, and any other relief deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands jury trial, and after trial, judgment against Defendants with the following relief:

1. Compensatory damages, emotional distress damages, punitive damages, and costs;

2. Such other relief as this Court shall deem just and proper.

## CERTIFICATION

I hereby certify under penalty of perjury under the laws of the United States of America that I am the *pro se* plaintiff in the above Complaint; that the contents of the said Complaint are true to my personal knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

October 17, 2020.

CELESTE B. DELFIN
162-13 144th Avenue
Jamaica, NY 11434
Cell No. 908-340-7940
Email: celestedelfin20@gmail.com
*Pro Se Plaintiff*